[Cite as *Caldwell v. Custom Craft Builders, Inc.*, 2021-Ohio-4173.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DANYETTE CALDWELL,                    :

    Plaintiff-Appellee,          :

                        No. 110168

v.                                    :

CUSTOM CRAFT
BUILDERS, INC., ET AL.,               :

    Defendants-Appellants.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** November 24, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-887398

---

### *Appearances:*

Myers Law, L.L.C., and Daniel J. Myers, *for appellee.*

Allen C. Hufford, *for appellants.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendants-appellants, Oscar Lawrence ("Lawrence") and Acorn Plumbing and Heating, L.L.C. ("Acorn") (together the "appellants"), appeal from the trial court's judgment in favor of plaintiff-appellee, Danyette Caldwell ("Caldwell"),

following a bench trial. Appellants raise the following assignments of error for review:

> 1. The trial court erred/abused its discretion by deeming plaintiff's requests for admissions admitted as to [appellants].
>
> 2. The trial court erred/abused its discretion by denying [appellant's] motion to withdraw or amend admissions.
>
> 3. The trial court erred by holding that there was no confusion as to whether or which requests for admissions were directed to Oscar Lawrence, Jr., and/or to Acorn Plumbing and Heating, L.L.C.
>
> 4. The trial court erred in finding any contract or agreement existed by and between [Caldwell] and [the appellants].
>
> 5. The trial court erred in admitting plaintiff's contract with Charles Allen into evidence.
>
> 6. The trial court erred in admitting plaintiff's check to Charles Allen into evidence.
>
> 7. The trial court erred in awarding damages against [appellants] and erred in awarding treble damages under the Ohio Consumer Sales Practices Act.
>
> 8. The trial court erred by rendering judgment against appellant Oscar Lawrence, Jr. individually, as appellee failed to provide evidence to provide for piercing of the corporate veil of Acorn Plumbing.

{¶ 2} After careful review of the record and relevant case law, we vacate the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. Procedural and Factual History

{¶ 3} This matter stems from the allegedly deceptive work practices of various contractors and individuals during the renovation of Caldwell's intended residence. Relevant to this appeal, Acorn, which is owned and operated by

Lawrence, is in the business of performing plumbing, heating, ventilation, and air conditioning services (hereinafter "HVAC services") in Northeast Ohio. On August 2, 2016, Caldwell entered into a Contractor Residential Agreement with defendant Charles Allen ("Allen"), now deceased, who represented that he was a licensed contractor and an agent of Acorn. Pursuant to the written contract, Allen agreed, among other things, to install two new Lennox furnaces in exchange for $9,500 in total labor costs. Ultimately, however, the furnaces were never delivered despite Caldwell's upfront payment of $4,500.

{¶ 4} On October 13, 2017, Caldwell filed a civil complaint against the appellants and additional defendants, including Custom Craft Builders, Inc., Patrick Iacobacci, Western Surety Company, and Allen. With respect to the appellants, the complaint sought damages, injunctive relief, and declaratory judgment based on claims for breach of contract, conspiracy to commit fraud, as well as violations of the Consumer Sales Practices Act ("CSPA").

{¶ 5} A case management conference was held on January 24, 2018. Relevant to this appeal, the trial court instructed Caldwell to perfect service on the appellants and ordered discovery to be completed by May 31, 2018.

{¶ 6} On April 10, 2018, Lawrence filed a pro se answer, generally denying the allegations posed against him. Specifically, Lawrence expressed that he never contracted with Caldwell to provide HVAC services.

{¶ 7} On May 20, 2018, defense counsel entered a notice of appearance on behalf of Acorn and Lawrence. On the same day, Acorn sought "leave to file an

answer and/or responsive pleading." Lawrence also sought leave to amend his pro se answer.

{¶ 8} The trial court granted Acorn's request for leave on May 31, 2018. In a separate journal entry, the trial court determined that Caldwell had failed to perfect service on Lawrence within six months of filing the complaint. Accordingly, the court ordered Caldwell to perfect service on Lawrence by June 13, 2018, or risk dismissal.

{¶ 9} On June 13, 2018, Caldwell provided the court with notice of service on Lawrence pursuant to the stipulation by defense counsel. Caldwell further stipulated to the appellants' need for additional time "to plead or otherwise respond to the complaint" on or before July 11, 2018.

{¶ 10} On July 16, 2018, the appellants, by and through counsel, again sought an additional seven days to file an answer and responsive pleading. Defense counsel indicated that the failure to file a timely response was the product of excusable neglect. On July 17, 2018, the appellants filed an additional motion for leave to file an answer and responsive pleading. Unlike the motion filed the previous day, this motion for leave attached the appellants' collective answer and assertion of affirmative defenses.

{¶ 11} On July 17, 2018, the trial court issued a journal entry, granting the appellants' July 16, 2018 request for leave. The appellants were instructed to file an answer or other responsive pleadings by July 20, 2018. On July 18, 2018, the trial

court issued a second journal entry, stating that the appellants' motion for leave filed on July 17, 2018, was rendered moot by the court's prior judgment.[1]

{¶ 12} On July 30, 2018, Caldwell filed a Civ.R. 56(F) motion for continuance of discovery and dispositive motion deadlines.  In the motion, Caldwell indicated that on April 16, 2018, the appellants were served with discovery requests "via mail, including electronically on a compact disc in a Word doc."[2]  Caldwell argued that additional discovery time was necessary because the appellants had yet to respond to the timely filed discovery requests, and the "documents and information" in their possession could be relevant to the resolution of pending dispositive motions filed by the remaining defendants.  The motion was supported by the affidavit of counsel for Caldwell, who averred in relevant part:

> Both Lawrence and Acorn had ignored previous discovery requests, and all requests for admissions are now admitted.  However, they failed to respond to numerous interrogatories and requests for production of documents, responses of which go to the heart of a majority of Western Surety Company's argument on summary judgment,[3] and specifically to what work was done, and whether Charles Allen, an employee of Acorn, was working as an agent for Acorn.
>
> * * *

---

[1] As discussed further below, it is evident that by rendering the appellants' July 17, 2018 motion moot, there was confusion as to the status of the answer attached to that motion for leave.  Believing they had already filed their answer in their July 17, 2018 request for leave, no additional answer was filed by the appellants prior to the court's July 20, 2018 deadline.

[2] The discovery requests purportedly served on the appellants was attached to the motion, marked Plaintiff's exhibit No. 1-B.

[3] Defendant Western Surety Company had previously moved for summary judgment on June 9, 2018.  The motion was ultimately granted on August 21, 2018.

It is essential to get responses to discovery requests, attached hereto as Exhibit 1-B, before plaintiff can oppose or brief the issues on summary judgment.

{¶ 13} On August 20, 2018, the trial court denied Caldwell's motion to continue, including Caldwell's request to extend the May 31, 2018 discovery deadline.

{¶ 14} On August 22, 2018, the trial court issued a journal entry, finding the appellants were in default based on their failure to file their answer or other responsive pleading by July 20, 2018. The court advised Caldwell to file appropriate default materials, and set the matter for a default hearing to commence on September 17, 2018.

{¶ 15} On August 28, 2018, the appellants filed a motion for relief from judgment pursuant to Civ.R. 60, arguing that they "did, in fact, submit a joint answer captioned as Motion for Leave to File Answer Instanter" on July 17, 2018. In addition, the appellants provided the trial court notice of serving plaintiff's counsel with its joint reply to plaintiff's requests for admissions, interrogatories, and request for production of documents.

{¶ 16} On September 5, 2018, the trial court issued a nunc pro tunc journal entry to reflect that Lawrence "filed his answer on 04/09/2018 and therefore is not in default." Furthermore, the trial court provided Lawrence additional time to amend his answer. With respect to Acorn, the trial court granted Acorn's renewed request for leave to file a pleading out of time on September 10, 2018. The trial court "deemed [Acorn]'s answer, attached to its motion [for leave], as filed on September

10, 2018." Accordingly, the default hearing set for September 17, 2018, was cancelled.

{¶ 17} On September 20, 2018, the trial court referred the case to arbitration pursuant to Loc.R. 29 of the Court of Common Pleas of Cuyahoga, General Division. Based on a theory advanced by Caldwell during the arbitration proceedings, the appellants preemptively filed a motion with the trial court, requesting the court to (1) order that Caldwell's discovery requests were not properly served, and/or did not comply with the applicable Rules of Civil Procedure; (2) grant the appellants an enlargement of time to reply to the admissions, or (3) in the alternative, accept the responses to requests for admissions served on Caldwell on August 29, 2018, or order that the admissions be withdrawn. The appellants alleged that if the trial court were to accept Caldwell's position that the requests for admissions should be deemed admitted based upon the appellants' failure to timely respond, the court would not facilitate a "resolution on the merits." Ultimately, the motion was denied pursuant to Loc.R. 29.0(I)(D).

{¶ 18} On October 23, 2018, the arbitrator issued a report, awarding judgment in favor of Caldwell and against the appellants, jointly and severally, in the amount of $22,655. The appellants appealed the arbitration award to the trial court, requesting a de novo trial. Accordingly, the matter was returned to the trial court's docket on November 1, 2018.

{¶ 19} On January 10, 2019, the appellants filed a motion titled, "notice regarding admissions and alternative motion." In the filing, the appellants

reiterated its position that it was inappropriate to deem Caldwell's requests for admissions as admitted absent evidence of sufficient service. The appellants maintained that it would be improper to deem the requests for admissions as admitted where, as here, the discovery requests were allegedly sent before service was perfected upon the appellants. In the alternative, the appellants moved to withdraw or amend their admissions pursuant to Civ.R. 36(B).

{¶ 20} On March 19, 2019, the trial court denied the appellants' motion, stating, in relevant part:

> The issue is whether Defendants were properly served Plaintiff's summons and complaint before Plaintiff propounded discovery, including requests for admission, upon both defendants. Civil Rule 36 states that the requests "may be served upon any party after service of the summons and complaint upon that party." Civ.R. 36(A). Defendants argue that they were served Plaintiff's requests for admission before they were successfully served Plaintiff's summons and complaint, and thus, service of the requests was premature and the requests cannot be deemed admitted.
>
> This court's review of the docket establishes the following:
>
> * * *
>
> On January 28, 2018, service was perfected on Defendant Acorn Plumbing by regular mail on its statutory agent.
>
> On February 6, 2018, service was perfected on Defendant Acorn Plumbing by certified mail on its statutory agent.
>
> On April 9, 2018, Mr. Lawrence filed an answer on his own behalf. He had not yet been served Plaintiff's summons and complaint.
>
> A review of Mr. Lawrence's answer shows that he did not raise the affirmative defense of insufficient process of service. * * * Therefore, by failing to raise insufficiency of service of process in his answer, Mr. Lawrence waived this affirmative defense, and submitted to this court's personal jurisdiction. As a result, when Plaintiff propounded her first

set of discovery requests on April 16, 2018 — including requests for admission — on Mr. Lawrence and Acorn Plumbing, both Defendants were properly served. Because they were properly served, Defendants cannot now claim that they received the discovery requests before they were properly served.

\* \* \*

Plaintiff argues that Defendants failed to timely respond to her requests for admissions, therefore the admissions are deemed admitted. The evidence shows that Plaintiff granted Mr. Lawrence additional time, until May 25, 2018 — just prior to the discovery cut-off date — to respond to the requests. Defendants present no evidence establishing that they responded by May 25, 2018. The court never extended the discovery cut-off date beyond May 31, 2018. Therefore, pursuant to Civ.R. 36(A)(1), the admissions are automatically deemed admitted.

{¶ 21} The matter proceeded to a bench trial on March 26, 2019.[4] At the onset of trial, the court reiterated that the requests for admissions had been deemed admitted due to the appellants' failure to respond in a timely manner. Defense counsel raised a standing objection to the trial court's legal conclusion, arguing that (1) the discovery requests were not properly served on Acorn or Lawrence, and (2) there could not be a fair and impartial trial on the merits where Caldwell's allegations are predicated on facts that the appellants "would [never] have admitted to in a million years and are not true." (Tr. 14.)

{¶ 22} Caldwell testified on her own behalf. Consistent with the allegations set forth in the complaint, Caldwell testified that while renovating her intended residence, she entered into a written contract with Allen to replace two furnaces.

---

[4] Prior to trial, the issues involving the other parties to this case were either resolved through settlement or dismissal, leaving only the claims between Caldwell and the appellants for trial.

According to Caldwell, Allen had expressed that he was "a technician under Acorn." (Tr. 17.) Caldwell was familiar with Acorn's work practices because she had previously contracted with the company to perform plumbing work at her home. Caldwell testified that following her execution of the written agreement, she was presented with a permit for the HVAC services, which reflected that it was obtained from the county by Acorn. At that time, Caldwell paid Allen a deposit in the amount of $4,500.

{¶ 23} In the written contract, Allen agreed to furnish and install two Lennox furnaces. However, when Allen arrived at Caldwell's home for installation, he was in possession of lesser-quality furnaces. Caldwell refused to allow Allen to install the "off-brand" furnaces and demanded that he comply with the express terms of the written agreement. Caldwell testified that she engaged in phone and text message conversations with a representative of Acorn to resolve the service issue. Ultimately, however, the Lennox furnaces were never installed by Allen or Acorn, and Caldwell was forced to find a new contractor to perform the desired HVAC services. In addition, Caldwell was not refunded the $4,500 she paid up front for the furnaces. Caldwell noted that she suffered undue stress and incurred substantial delays in other home-renovation projects as a result of Acorn's failure to comply with the terms of the written contract.

{¶ 24} Relevant to this appeal, Caldwell further testified that the written contract she entered into with Allen did not contain a pricing breakdown that listed labor and material costs. In addition, Caldwell was not provided a receipt of her

payment in the amount of $4,500, and was not advised of her right to receive a written, oral, or no estimate. At the conclusion of Caldwell's direct testimony, the court admitted, in pertinent part, copies of the requests for admissions, the permit for HVAC services, the check made payable to Allen, and the written contract.

{¶ 25} During cross-examination, Caldwell acknowledged that there was no language in the written contract indicating that Allen signed the contract as an agent or representative of Acorn or an employee of Lawrence.

{¶ 26} Lawrence, who was 81 years old at the time of trial, testified that he is a plumbing and heating contractor, as well as the manager of Acorn. With respect to the HVAC services sought by Caldwell in this case, Lawrence maintained that he did not know Allen and certainly never granted Allen the authority to enter into service contracts on his behalf or on behalf of Acorn. He stated that he never met with Caldwell to discuss HVAC services, never purchased furnaces on her behalf, and did not attempt to deliver any furnaces to her home. In addition, Lawrence noted that he and Acorn were not parties to the contract entered into between Caldwell and Allen, and that he and Acorn did not receive any proceeds from the payment made to Allen in the amount of $4,500.

{¶ 27} Lawrence acknowledged that he obtained the necessary permit to provide the HVAC services for Caldwell. However, he explained that he only obtained the permit after being approached by an individual named "Nijore," who advise Lawrence the if he pulled the permit, "Nijore would get [him] the heating job at [Caldwell's] house." (Tr. 72.) Lawrence explained that once Caldwell contacted

Acorn and expressed problems with a contract she entered into with Allen, a person Lawrence did not know, he determined that it was necessary to cancel the permit.

{¶ 28} At the conclusion of the trial, plaintiff's counsel argued that Caldwell's testimony, together with the requests for admissions, established the appellants' liability under CSPA. In response, defense counsel restated his position that the appellants were not involved in this consumer transaction, despite the court's deeming the requests for admissions as admitted being "a big strike against our case." (Tr. 104.)

{¶ 29} On December 19, 2019, the trial court issued findings and fact and conclusions of law, entering judgment in favor of Caldwell and against the appellants, jointly and severally, in the amount of $50,654 with interest at 5 % per annum from the date of final judgment. In addition, the appellants were permanently enjoined from engaging in the business practices that precipitated this matter.

{¶ 30} In support of its judgment, the trial court found, in relevant part:

7. Defendants engaged in the following acts and practices, which this court hereby declares as unfair or deceptive acts in violation of the CSPA pursuant to R.C. 1345.09(D):

a. Defendants failed to provide the receipt in the form or containing the language required by OAC 109:4-3-07(B) for the initial payment made by the consumer, Ms. Caldwell.

b. Defendants failed to provide a notice of right to an estimate to Ms. Caldwell stating that she had the right to receive a written, oral, or no estimate in violation of OAC 109:4-9-3-05(A).

c.  Defendants failed to provide Ms. Caldwell with a contract containing a three-day cancellation clause as mandated by R.C. 1345.23 and OAC 109:4-3-11.

d.  Defendants failed to provide Ms. Caldwell with duplicated, completed notices of cancellation as outlined and required by R.C. 1345.23 and OAC 109:4-3-11.

e.  Defendants took a deposit and then allowed more than eight weeks to elapse without causing delivery of the goods or services promised, or delivered goods or services of equal value, or refunding money, in violation of OAC 109:4-3-09(A)(2).

f.  Defendants engaged in a bait-and-switch by (1) promising the delivery of a more expensive or higher quality item while never intending on selling that item and then trying to provide a lesser quality or value item, and (2) claiming to be the persons performing the work via their obtaining the permit, and then having someone else perform the work, in violation of OAC 109:4-3-03(B).

g.  Defendants made a false representation to Ms. Caldwell, that they would be performing their work via their obtaining of the building permit, which would cause in the mind of a reasonable consumer a belief that they were performing the work, which is a violation of OAC 109:4-3-10(A).

h.  Defendants failed to provide a breakdown of the cost to Ms. Caldwell of the project, separating out the labor costs from the material costs, which is required by OAC 109:4-3-05(D)(12).

i.  Defendants, who are licensed by the Ohio Construction Industry Licensing Board, engaged in conduct that violates R.C. 4740.10(B)(1) in relation to their work as licensed contractor.  Specifically, Defendants engaged in fraud, misrepresentation, and deception in the conduct of their business by allowing others who are unlicensed to use their license, and by otherwise acting deceptively as outlined previously.  R.C. 4740.10(B)(1)(f)-(h)(i).  This is not a current violation of the CSPA and no statutory damages are awarded for this specifically declared conduct except as it otherwise violates the Ohio Administrative Code.

8.  As a direct and proximate result of Defendants' failure to provide the required receipt, Ms. Caldwell suffered the actual economic damages of $4,500, which must be trebled to $13,500 because this

violation was of an Ohio Administrative Code provision in OAC 109:4-3-01 *et seq.*

9. As a direct and proximate result of Defendants' failure to provide the promised goods or services within eight weeks of the initial deposit, and in fact never providing those services or goods, Ms. Caldwell suffered the actual economic loss of having to hire a replacement contractor, $12,318.00. However, this amount must be reduced by the additional $5,000 amount Ms. Caldwell expected to pay had the work been done, for a sum of $7,318.00 in actual economic damages from this conduct, which, because it was a violation of the Ohio Administrative Code, must be trebled to $21,954.00.

10. Ms. Caldwell did not suffer actual damages as a result of the other six (6) violations of the Ohio Administrative Code, either because she suffered no damages therefrom, or because the damages were the same as other violations, and therefore she is entitled to additional statutory damages of $1,200, or $200 per additional violation of the CSPA. R.C. 1345.09(B).

11. As a direct and proximate result of this illegal conduct in violation of the CSPA, Ms. Caldwell suffered severe emotional and mental distress and anguish. This court awards the legal maximum amount of $5,000 for this non-economic harm. R.C. 1345.09(B).

12. Defendants engaged in fraud by intentionally and knowingly making false representations of fact to Ms. Caldwell upon which she relied to her detriment. Because the court has already awarded compensatory damages, punitive damages are hereby awarded of two-times the deposit amount, for a total of $9,000.

{¶ 31} In November 2020, a hearing was held to assess the amount of attorney fees to be awarded to Caldwell under CSPA. At the conclusion of the hearing, the trial court issued a journal entry, awarding Caldwell attorney fees in the amount of $20,627.50.

{¶ 32} Appellants now appeal from the trial court's judgment.

## II. Law and Analysis

## A. Requests for Admissions

{¶ 33} In the first assignment of error, the appellants argue the trial court erred by deeming Caldwell's requests for admissions admitted. In the second assignment of error, the appellants argue the trial court abused its discretion by denying their motion to withdraw or amend admissions. We address these assignments of error together because they are related.

{¶ 34} Under Civ.R. 36(A), a party to a lawsuit may serve a written request for admissions on the opposing party. Unless the court modifies the timeframe, the receiving party must answer or object to the admissions within 28 days after the requests for admissions are served or else the admissions are deemed admitted. Civ.R. 36(A)(1).

{¶ 35} "[W]here a party fails to timely respond to the requests for admissions, those admissions become fact." *Bayview Loan Servicing, L.L.C. v. St. Cyr,* 2017-Ohio-2758, 90 N.E.3d 321, ¶ 15 (8th Dist.), citing *Smallwood v. Shiflet,* 8th Dist. Cuyahoga No. 103853, 2016-Ohio-7887, ¶ 18. Civ.R. 36 is a self-enforcing rule. *6750 BMS, L.L.C. v. Drentlau,* 2016-Ohio-1385, 62 N.E.3d 928, ¶ 13 (8th Dist.). Therefore, if the requests are not timely answered, they are automatically admitted and recognized by the trial court unless a party moves to withdraw or amend its admissions under Civ.R. 36(B). *Id.*

{¶ 36} With that said, however, the trial court has discretion — upon motion by a party — to permit the withdrawal or amendment of Civ.R. 36(A) admissions.

*Id.* at ¶ 15. Civ.R. 36 does not specify that a formal motion is required nor does the rule identify a time when the motion must be filed. *Balson v. Dodds*, 62 Ohio St.2d 287, 290, 405 N.E.2d 293 (1980), fn. 2. Courts have accepted — absent a written or oral motion to withdraw — various challenges to the truth of an admission as implicit motions to withdraw. *Ezzo v. Ezzo*, 11th Dist. Ashtabula No. 2018-A-0059, 2019-Ohio-2395, ¶ 29. *See Balson* at fn. 2 (contesting the truth of admissions serves as evidence of a motion to withdraw the admissions); *see also 6750 BMS* at ¶ 17 (a party's response to a motion to declare admissions admitted and simultaneously filing an answer to the requests for admissions act as a motion to withdraw); and *Haskett v. Haskett*, 11th Dist. Lake No. 2011-L-155, 2013-Ohio-145, ¶ 25 (challenging the truth of the admissions during trial proceedings represents a motion to withdraw).

{¶ 37} Relevant in this case, the Ohio Supreme Court has explained in *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67, 485 N.E.2d 1052 (1985), that a trial court's decision to allow the withdrawal or amendment of admissions takes into consideration the impact the admissions have on the litigation and the resulting prejudice to the opposing party, stating:

> The court may permit the withdrawal if it will aid in presenting the merits of the case and the party who obtained the admission fails to satisfy the court that withdrawal will prejudice him in maintaining his action. *Balson v. Dodds*, 62 Ohio St. 2d 287 [16 O.O.3d 329, 405 N.E.2d 293] (1980), paragraph two of the syllabus. This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.

*Id.* at 67.

{¶ 38} A trial court has complete discretion concerning discovery matters. *JP Morgan Chase Bank v. Stevens*, 8th Dist. Cuyahoga No. 104835, 2017-Ohio-7165, ¶ 17. Therefore, a trial court's discovery decisions, including the acceptance of a party's withdrawal of Civ.R. 36(A) admissions, will not be disturbed on appeal unless there is an abuse of discretion. *Bayview* at ¶ 20, 26.

{¶ 39} In this case, the 52 requests for admissions allegedly served upon Acorn and Lawrence on April 16, 2018, asked the appellants, inter alia, to admit that they (1) employed Allen during the relevant time periods; (2) permitted him to enter into the service contract with Caldwell on their behalf; (3) authorized Allen to make knowingly false representations to Caldwell; (4) applied for and obtained a permit for replacing two furnaces at Caldwell's home; (5) never intended to deliver the promised materials or complete the HVAC services at Caldwell's home; and (6) knowingly breached the contract they had with Caldwell. (Req. for adm. Nos. 6, 7, 10-12, 16-17, 25-27, 33-34, 36-38, 41-42, 44.)

{¶ 40} With respect to the CSPA violations alleged in the complaint, the requests for admissions further asked the appellants to admit that they (1) failed to provide Caldwell with a receipt for her $4,500 payment that expressly stated whether the payment was nonrefundable or refundable; (2) did not provide Caldwell with a document advising her of her right to an estimate; (3) did not provide a breakdown of the cost of the project, separating the labor costs from the material costs; (4) did not provide Caldwell with notices of cancellation as outlined in R.C.

1345.21, et seq.; (5) accepted a deposit and allowed more than eight weeks to elapse without causing delivery of the goods or services promised, or delivering goods or services of equal value, or refunding Caldwell's money; (6) did not include all material statements and aspects of the transaction in the written contract with Caldwell; (7) caused confusion as to the sponsorship, approval, or provider of the materials for the project; and (8) allowed other contractors to work under their permits and HVAC license. (Req. for adm. Nos. 9, 13-15, 21-22, 27-28, 45-48, 50.)

{¶ 41} Finally, the request for admissions asked the appellants to make critical admissions concerning damages, including the following: (1) Caldwell suffered actual damages of $4,500; (2) Caldwell suffered actual economic loss in the amount of $12,318 by having to hire a replacement contractor; and (3) Caldwell suffered severe emotional and mental distress and anguish. (Req. for adm. Nos. 29-31, 43, 52.)

{¶ 42} On appeal, the appellants initially restate their argument below that there were delays in perfecting service of the complaint, and the requests for admissions were never properly served on either defendant. Citing Civ.R. 36, the appellants contend that the requests for admissions, allegedly propounded on April 16, 2018, could not have been served in accordance with the rule where service of the complaint was not perfected on Lawrence until June 13, 2018. Appellants further maintain that there is no information in the certificate of service attached to the requests for admissions to suggest that the discovery request was (1) sent to

Acorn at all, or (2) electronically sent to either defendant, as required under Civ.R. 36(A).

{¶ 43} Alternatively, the appellants argue that, even if service of the requests for admissions were properly made, the trial court abused its discretion by failing to permit them to withdraw or amend their admissions. Appellants contend that by "allowing the deemed admissions to stand," the trial court effectively denied Acorn and Lawrence "a valid and legitimate defense," relieved Caldwell of her burden of proof, and failed to provide for and facilitate a resolution of the case on its merits. Appellants assert that because their request to amend their admissions was made approximately seven months before trial, Caldwell would not have been prejudiced or otherwise prevented from presenting her case.

{¶ 44} In response, Caldwell maintains that Acorn and Lawrence were each served with the summons and complaint before they were served with the requests for admissions on April 16, 2018. Caldwell states that the record reflects that service of process was perfected on Acorn on or about February 14, 2018. Regarding Lawrence, Caldwell maintains that because Lawrence did not raise service-related defenses in his pro se answer, filed April 9, 2018, he "waived all service of process issues and requirements, and could be served with requests for admissions at any time on or after April 9, 2018." Caldwell further argues that she complied with Civ.R. 36(A) by emailing the request for admissions "to the exact email address used by the appellants in the litigation for service of filing and communications of requests."

{¶ 45} Finally, with respect to the appellants' motion to withdraw or amend their admissions, Caldwell contends that the motion was inappropriate because it was filed after the case was referred to arbitration. Caldwell further contends that she would have suffered undue prejudice had the appellants been permitted to amend their admissions. Caldwell states that she "allowed Allen to go unserved, and be dismissed from the case, precisely because the requests for admissions propounded on appellants were unanswered and admitted by Civ.R. 36." Thus, Caldwell asserts that allowing the appellants to amend their admissions at this stage of the litigation would deny her "a remedy for the unfair, deceptive, and fraudulent acts to which she was subjected."

{¶ 46} After careful consideration, we find the trial court abused its discretion by denying the appellants' alternative motion filed January 10, 2019, to withdraw or amend their admissions pursuant to Civ.R. 36(B). Assuming, without deciding, that the requests for admissions were properly served on Acorn and Lawrence on April 16, 2018, we find the trial court's judgment undoubtedly prevented the case from being resolved on the merits.

{¶ 47} In this case, it is clear that the key issue is whether a relationship existed between Allen and the appellants such that the appellants can be held liable for the alleged misrepresentations of Allen and the related CSPA violations that are predicated on the written contract executed by Allen and Caldwell. The requests for admissions addressed these issues squarely, requiring the appellants to admit, among other things, that they employed or otherwise authorized Allen to enter into

the written contract with Caldwell, with knowledge and approval of his false representations.

{¶ 48} In this regard, however, the appellants have repeatedly contested the truth of the Civ.R. 36(A) admissions, and have consistently maintained that they had no association with Allen or involvement in the written contract entered into between Caldwell and Allen. Under these circumstances, we find that the appellants have demonstrated that withdrawal or amendment of the admissions would assist in justly resolving this action on its merits, and conversely, the trial court's denial of its motion effectively prevented the appellants from having the case resolved on the merits. *See Bayview*, 2017-Ohio-2758, 90 N.E.3d 321, at ¶ 22, citing *Kutscherousky v. Integrated Communications Solutions, L.L.C.*, 5th Dist. Stark No. 2004 CA 00338, 2005-Ohio-4275, ¶ 19 ("[W]here key controverted issues are inadvertently or negligently admitted," the end result "is an unjustified suppression of the merits, and therefore, that presentation of the merits is subserved by permitting withdrawal in such cases.").

{¶ 49} Moreover, we find no merit to Caldwell's contention that she would have suffered undue prejudice had the court permitted the appellants to withdraw or amend their admissions. "[W]here a party all but conceded liability through its admission in a contested case, it is unlikely that the opposing party could have reasonably relied on the truth of the admission." *Kutscherousky* at ¶ 27. In such a case, it is doubtful that a party that obtained the deemed admission could reasonably have believed the opposing party "'intended to admit liability in [the] contested

action.'" *Id.* at ¶ 28, quoting *Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192, 193 (D.Conn.1976). And even if the party did, in fact, rely on that assumption, the courts are "'loathe to reward what would have been an unreasonable reliance in order to glorify technical compliance with the rules of civil procedure.'" *Id.*; *Fifth Third Bank v. Meadow Park, L.L.C.*, 12th Dist. Clinton No. CA2015-07-012, 2016-Ohio-753, ¶ 30.

{¶ 50} As discussed, the requests for admissions filed in this case were meticulous and addressed key issues, including the scope of the relationship between Allen and the appellants, facts pertinent to various CSPA violations, and specific admissions concerning damages. Although Caldwell claims prejudice due to the dismissal of Allen from this case, the record reflects that Caldwell's decision to voluntarily dismiss Allen was predicated on her inability to perfect service on him. Moreover, the fact that Allen has been dismissed from this case does not prevent Caldwell from having the opportunity to obtain a judgment against the appellants on the merits. Arguably, Caldwell may be capable of presenting testimony and documentary evidence that, if deemed credible, may allow the trier of fact to enter judgment in her favor. At this time, however, it is evident that the trial court's findings of fact and conclusions of law, issued December 19, 2018, relied extensively on the admissions that were deemed admitted in support of its judgment in favor of Caldwell. Because these deemed admissions, marked as Plaintiff's exhibit No. 2, effectively precluded the court from giving any weight to the testimony set forth by Lawrence on behalf of the appellants, we are unable to accept Caldwell's position

that "the judgment against the appellants in the trial court is supported by competent, credible evidence, even if the requests for admissions never existed." Thus, the admission of the deemed admissions was not harmless.

{¶ 51} Finally, this court is equally unpersuaded by Caldwell's reliance on Loc.R. 29. As stated, this appeal stems from an appeal of the arbitrator's judgment in the common pleas court. Once the appellants appealed the arbitrators' report and award, the case was correctly returned to the trial court for a trial de novo. Loc.R. 29, Part VII (B) and (C). Although the trial court must afford a trial de novo following an appeal of an arbitration report and award, this court has recognized that the court "is not mandated to only set the matter for trial." *Johnson v. Johnson*, 8th Dist. Cuyahoga No. 108420, 2020-Ohio-1381, ¶ 32. Thus, "it is within the trial court's discretion to grant pertinent motions following an appeal from the arbitration report and award and prior to holding a trial de novo." *Id.*, citing *Temkin v. Lotter*, 8th Dist. Cuyahoga No. 87092, 2006-Ohio-6164, ¶ 8-9 (it was within a trial court's discretion, after an arbitration report and award was rendered and appealed and the case was returned to the trial court's docket, to grant leave to file a motion for summary judgment and rule on the motion).

{¶ 52} Caldwell correctly states that Loc.R. 29, Part I(D), provides that once a matter is referred to arbitration, no further pleadings will be permitted. In this case, however, the appellants' motion to withdraw or amend their admissions was filed after the arbitration proceedings had concluded and the matter was returned to the trial court. In light of the precedent set forth by this court, the trial court was

not precluded from considering the appellants' motion to withdraw or amend their admissions and, in fact, was free to issue orders to extend or modify discovery. *See Johnson* at ¶ 34. Accordingly, we find no merit to Caldwell's assertion that consideration of the appellants' motion would be in direct contravention of the court's local rule.

**{¶ 53}** Based on the foregoing, the second assignment of error is sustained. The trial court's verdict in favor of Caldwell and its award of attorney fees are vacated; the matter is remanded to allow the appellants to withdraw or amend their admissions. The remaining assignments of error are rendered moot by our resolution of the second assignment of error.

**{¶ 54}** Judgment vacated; case remanded.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR